UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| THOMAS OSBORNE and JEAN MARIE OSBORNE, individually and as Guardians ad Litem for the minor child, Thomas William Osborne,<br><br>Plaintiffs,<br><br>-vs-<br><br>MARINA INN @ GRAND DUNES, LLC; THE MARINA INN AND VILLAS AND CONDOMINIUM ASSOCIATION, INC.; GRAND DUNES DEVELOPMENT CO., LLC; DUNN SOUTHEAST, INC., d/b/a R.J. GRIFFIN & COMPANY; GRAND DUNES PROPERTIES LLC; BURROUGHS & CHAPIN COMPANY, INC.; BURROUGHS & CHAPIN REALTY INC. d/b/a PRUDENTIAL BURROUGHS & CHAPIN, INC.; and GRAND DUNES RENTAL MANAGEMENT CO., LLC;<br><br>Defendants. | Civil Action No.: 4:08-cv-0490-TLW-TER<br><br><br><br>**AMENDED**[1]<br>**REPORT AND RECOMMENDATION** |

**I.     INTRODUCTION**

This case arises from Plaintiff's purchase of a condominium unit (the Unit) in the Marina Inn and Villas, a horizontal property regime located in Myrtle Beach, South Carolina. Presently before the Court is Defendants Defendants Marina Inn @ Grande Dunes, LLC, The Marina Inn Villas and Condominium Association, Inc., Grande Dunes Development Company, LLC, Grande Dunes Properties, LLC, Burroughs & Chapin Company, Inc., Burroughs & Chapin Realty, Inc. d/b/a

---

[1] The deadline for filing Objections will run from the date of the original Report and Recommendation, August 28, 2009. Thus, Objections must be filed by September 17, 2009.

Prudential Burroughs & Chapin Realty, Inc. and Grand Dunes Rental Management Company, LLC's (Grand Dunes Defendants) Motion to Compel Arbitration (Document # 12) and Defendant Dunn Southeast Inc., d/b/a R.J. Griffin and Company's Motion to Stay and Compel Arbitration (Document # 18). Hearings were held on January 15, 2009, and August 27, 2009.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636. This Report and Recommendation is entered for review by the district judge.

## II. FACTUAL ALLEGATIONS

Plaintiffs allege that mold spores were present in their Unit due to various construction defects, and exposure to these spores resulted in physical harm to their minor child, Thomas William Osborne. Plaintiffs also allege they were fraudulently induced to purchase the Unit due to misrepresentations by the seller, Marina Inn @ Grande Dunes, LLC ("Marina Inn"), and the seller or its agents attempted to conceal the presence of mold in the Unit. Finally, Plaintiffs allege that they participated in a rental program managed by the Grande Dunes Rental Management Co., LLC (the "Rental Manager"), and Rental Manager breached its contractual obligation to properly maintain and rent the unit during Summer 2007.

Plaintiffs assert eighteen causes of action, including four Breach of Contract claims, a claim for Breach of Implied Covenant of Good Faith and Fair Dealing, four claims of Breach of Express and Implied Warranties, Intentional Infliction of Emotional Distress, Violation of S.C. Unfair Trade Practices Act, Negligent Misrepresentation, Fraud and Constructive Fraud, Conspiracy, three claims for Negligence, and Negligent Infliction of Emotional Distress.

## III. ARBITRATION AGREEMENT

On December 13, 2004, Plaintiffs entered into Real Estate Purchase Agreement (the Agreement) (Ex. A to Defendants' Motion to Compel Arbitration) with Defendant Marina Inn @ Grand Dunes, LLC for the new construction and purchase of the Unit in Myrtle Beach, South Carolina. The first page of the Agreement provides in all capital, bold, and underscored print:

**PORTIONS OF THIS AGREEMENT ARE SUBJECT TO ARBITRATION PURSUANT TO THE SOUTH CAROLINA UNIFORM ARBITRATION ACT, § 15-48-10, S.C. CODE OF LAWS OF 1976, AS AMENDED.**

Agreement at 1. The arbitration provision is contained in Section 12 of the Agreement in all capital, bold print:

> **DISPUTE RESOLUTION; MEDIATION AND ARBITRATION.** IF A DISPUTE, CONTROVERSY OR CLAIM (WHETHER BASED UPON CONTRACT, TORT, STATUTE, COMMON LAW OR OTHERWISE, AND EXCEPT AS PROVIDED IN SECTION 12.1 BELOW) (COLLECTIVELY A "DISPUTE") ARISES FROM OR RELATES DIRECTLY OR INDIRECTLY TO THIS AGREEMENT, THE DESIGN AND/OR CONSTRUCTION OF THE UNIT, AND IF THE DISPUTE CANNOT BE SETTLED THROUGH DIRECT DISCUSSIONS, WE SHALL ENDEAVOR TO RESOLVE THE DISPUTE BETWEEN OURSELVES, AS WELL AS BETWEEN US AND THE ARCHITECT, ENGINEER OR OTHER DESIGN PROFESSIONAL, AND THE CONSTRUCTION CONTRACTOR OF THE BUILDING OF WHICH YOUR UNIT IS A PART, EACH OF WHOM ARE INTENDED TO BE, AND SHALL BE, A THIRD-PARTY BENEFICIARY HEREOF, BY PARTICIPATING IN A MEDIATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION (THE "AAA") UNDER ITS COMMERCIAL MEDIATION RULES BEFORE RESORTING TO ARBITRATION. THE COSTS AND EXPENSES OF MEDIATION, OTHER THAN OUR RESPECTIVE LEGAL FEES, SHALL BE SHARED EQUALLY BY BOTH OF US. THEREAFTER, ANY UNRESOLVED DISPUTE SHALL BE SETTLED BY BINDING ARBITRATION ADMINISTERED BY THE AAA IN ACCORDANCE WITH ITS COMMERCIAL ARBITRATION RULES AND JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR SHALL BE FINAL AND BINDING, SHALL NOT BE APPEALABLE, AND MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THE ARBITRATION PROCEEDING SHALL BE CONDUCTED IN HORRY COUNTY, SOUTH CAROLINA BEFORE A NEUTRAL ARBITRATOR WHO HAS SUBSTANTIAL EXPERIENCE IN THE SUBJECT MATTER OF THE DISPUTE.

Agreement at 9.[2]

## IV. DISCUSSION

### A. Contentions of the Parties

Defendants assert that each cause of action alleged in Plaintiffs' Complaint arises from or relates "directly or indirectly to the purchase agreement" or the "design and/or construction of the unit" in controversy, and thus, Plaintiffs' claims must be submitted to binding arbitration pursuant to the agreement between the parties.

Plaintiffs do not argue that their claims fall outside the arbitration agreement. Rather, they argue that the agreement itself is unenforceable because it is ambiguous, illegal and violative of public policy, unconscionable, the minor party is not bound to the agreement, and indispensable parties are not subject to arbitration. Counsel for Plaintiffs conceded at the August 27, 2009, hearing that, should the arbitration agreement be enforceable, their claims against all Defendants are covered by the agreement except the claims asserted by the minor child.

### B. Applicable Law

The Grand Dunes Defendants assert that the South Carolina Uniform Arbitration Act (SCUAA), S.C. Code Ann. § 15-48-10, et seq. is applicable to this case, or, in the alternative, that the Federal Arbitration Act (FAA), 9 U.S.C. § 3, et seq. is applicable. Defendant R.J. Griffin asserts that the Federal Arbitration Act applies. Plaintiff argues that the arbitration agreement is

---

[2]The Master Deed also includes an arbitration agreement, and Plaintiffs argue that the arbitration agreement in the Master Deed cannot be consideration a modification to the arbitration provision in the Real Estate Purchase Agreement because Plaintiffs did not sign off on any modifications. Defendants assert that the Court need not reach that issue because the arbitration provision in the Real Estate Purchase Agreement alone encompasses all of Plaintiffs' claims against Defendants. The undersigned agrees.

unenforceable because it is ambiguous as to what law applies.

The first page of the Real Estate Purchase Agreement indicates that the SCUAA is applicable. In general, as the United States Supreme Court has explained, courts are to respect an arbitration clause specifying the application of state arbitration law, even when the agreement containing that clause is subject to the Federal Arbitration Act. Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468 (1989). However, if the arbitration agreement in question cannot be enforced under state law, the FAA preempts the state law. See Soil Remediation Co. v. Nu-Way Environmental, Inc., 323 S.C. 454, 459-460, 476 SE.2d 149, 151-152 (1996) (enforcing, under FAA, arbitration agreement that failed to satisfy the notice requirements of the SCUAA) (citing Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681 (1996) (holding that "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable only to arbitration provisions")). An arbitration agreement is enforceable under the FAA if it involves interstate or foreign commerce. Id. at 460, 476 S.E.2d at 152.

In the present case, Plaintiffs seek relief in part for alleged personal injuries they claim to have suffered due to the improper construction of the Unit. Section 15-48-10 of the SCUAA–a state law applicable only to arbitration provisions–exempts from application of the Act "[a]ny claim arising out of personal injury, based on contract or tort[.]" Therefore, the arbitration provision at issue in this case cannot be enforced under the SCUAA. As the United States Supreme Court has held, "the FAA pre-empts state laws which require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Volt Information Sciences, Inc. v. Bd. Of Trustees of Leland Stanford Junior University, 489 U.S. 468, 478 (1989) (quoting Southland Corp v. Keating, 465 U.S. 1, 10 (1984)).

The fact that the Agreement indicates that it is governed by the SCUAA is inapposite. In <u>Soil Remediation</u>, the front page of the parties' contract contained a legend illustrating that the parties had agreed to be governed by the SCUAA. That agreement could not be enforced, however, because the legend did not comply with the strict notification requirements of the SCUAA. <u>See</u> <u>Soil Remediation</u>, 323 S.C. at 458, 476 S.E.2d at 151. The court held that the FAA preempted the SCUAA and compelled arbitration, because the notification requirements of the SCUAA "single[d] out arbitration agreements" and made them unenforceable on grounds not applicable to contracts generally. <u>Id.</u>; <u>see</u> <u>also</u> <u>Munoz v. Green Tree Financial Corp.</u>, 343 S.C. 531, 539 n. 2, 542 S.E.2d 360, 363 n. 2 (2001) (explaining that <u>Soil Remediation</u> preempts state law "to the extent it would [invalidate] the arbitration agreement.").

Likewise, in the present case, the SCUAA singles out arbitration agreements by invalidating the parties' agreement to arbitrate their claims arising out of personal injury. Thus, the arbitration agreement is preempted by the FAA and can be enforced under the FAA. It is undisputed that the issues in this case involve interstate commerce. Plaintiffs are residents of New York, the Grand Dunes Defendants are South Carolina Corporations, and R.J. Griffin (the general contractor for the condominium) is a Missouri Corporation with its principal place of business in Atlanta. Moreover, a number of the principal subcontractors involved in the construction of the Marina Inn, including the plumbing subcontractor, the drywall subcontractor, the exterior cladding subcontractor, the window subcontractor, and the painting subcontractor, were from states other than South Carolina. Hillis Aff. at ¶ 4 (attached to R.J. Griffin's Motion to Stay). Thus, the transaction at issue involved interstate commerce and the FAA is applicable to the arbitration agreement.

The purpose of the Federal Arbitration Act (FAA) "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). The FAA "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). While Congress considered the advantage of expeditious resolution of disputes through arbitration in enacting the FAA, its primary purpose was to enforce agreements into which parties have entered. Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468, 478 (1989).

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer, 500 U.S. at 26. The "liberal federal policy favoring arbitration agreements manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements; the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.'" Mitsubishi, 473 U.S. at 625 (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983).

Initially, the court should decide if it is proper to resolve the dispute through arbitration. We should "engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Hooters of America, Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999). Our inquiry is not limited to defects in contractual formation such as lack of mutual

assent and want of consideration, but also includes "such grounds as exist at law or equity for the revocation of contracts." Id.; 9 U.S.C. § 2; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., at al., 473 U.S. 614, 627 (1985)("courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'").

There are two types of challenges to the validity of arbitration agreements. One challenges specifically the agreement to arbitrate and the other challenges the agreement (contract) as a whole. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440,444 (2006). The former is an issue to be addressed by the courts and the latter is to be addressed by an arbitrator. Id. at 445-46. In the present case, Plaintiffs challenge both the validity of the arbitration agreement as well and the validity of the contract as a whole. Nevertheless, our review does not encompass the validity of the entire agreement but is limited to the substantive validity of the agreement to arbitrate. Prima Paint Corp.v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967).

  **C.** **Ambiguity**

Plaintiffs assert that the arbitration agreement is ambiguous because the first page of the Real Estate Purchase Agreement states that certain portions of the agreement are subject to arbitration, but does not clearly identify to which portions the paragraph refers. In addition, Plaintiffs assert that the arbitration agreement is ambiguous because the first page states that the SCUAA applies while the actual arbitration agreement sets forth that the rules of the American Arbitration Association (AAA) apply. Plaintiffs argue that the ambiguities should be construed against the drafter of the contract.

The parties agree that state law contract principles govern whether a valid arbitration agreement exists. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995). Plaintiffs' argument that the contract is ambiguous as to what portions of the Real Estate Purchase Agreement are subject to arbitration is without merit. The arbitration provision clearly sets forth that all disputes, controversies or claims, whether based upon contract, tort, statute, common law or otherwise, and except as provided in section 12.1 of the agreement, that arise from or relate directly or indirectly to the agreement, the design and/or the construction of the unit are subject to binding arbitration. The exception to the arbitration agreement is clearly set forth in section 12.1. There is no ambiguity with respect to the scope of the arbitration agreement.

Next, the agreement is not ambiguous as to what law applies. The SCUAA (or the FAA as discussed above) applies with respect to the enforceability of the arbitration provision while the AAA rules apply to the actual arbitration itself. Plaintiffs fail to show how application of the SCUAA and the AAA rules make the contract terms

Finally, even if the agreement was ambiguous, that alone would not make the arbitration provision unenforceable. It is well settled that in construing a contract or agreement, the primary objective of the court is to give effect to the intention of the parties. Williams v. Teran, Inc., 266 S.C. 55, 59, 221 S.E.2d 526, 528 (1976); see also Gamble, Givens & Moody v. Moise, 288 S.C. 210, 215, 341 S.E.2d 147, 150 (Ct. App. 1986). If a contract is ambiguous, judicial construction is permitted to determine the parties' intent. Williams, 266 S.C. at 59, 221 S.E.2d at 528. Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hospital, 460 U.S. at 24-25. Thus,

construing the agreement in light of the clear federal policy in favor of arbitration, the court finds that the parties entered into a facially valid agreement to arbitrate and the claims asserted are within the scope of the agreement.

### D. Violative of Public Policy

Plaintiffs argue that the arbitration provision is violative of public policy because it forces Plaintiffs to give up their right to a trial-by-jury and forces them to present their case to arbitration without the benefit of discovery. As the Fourth Circuit has explained, "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 638 (4th Cir. 2002) (refusing to invalidate arbitration agreement that did not contain an "express jury waiver provision").

Furthermore, the Grand Dunes Defendants assert that the AAA rules provide for the exchange of information consistent with the expedited nature of arbitration. The Supreme Court has concluded that "the streamlined procedures of arbitration do not entail any consequential restriction on substantive rights." Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 232 (1987). Plaintiff has failed to present any authority indicating that a lack of discovery makes an arbitration agreement violative of public policy. "Courts should not annul contracts on doubtful grounds of public policy." Rice v. Multimedia, Inc., 318 S.C. 95, 100, 456 S.E.2d 381, 384 (1995). Plaintiffs' public policy arguments are without merit.

### E. Unconscionability

Plaintiff next argues that the arbitration agreement is unconscionable in several respects: 1) Plaintiffs were coerced into signing the purchase agreement which contains the arbitration clause, 2) Plaintiffs could not have obtained the Unit from any other source, 3) the arbitration clause is one-

sided in favor of Defendants, and 4) Defendants committed acts of fraud and intentional deceit.

Under South Carolina law, unconscionability is defined as "the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." Carolina Care Plan, Inc. v. United Health Care Servs., Inc., 606 S.E.2d 752, 757 (S.C. 2004).

Courts should look at several factors to determine whether there was an absence of meaningful choice, including the nature of the injuries suffered by the plaintiff; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the contract provision; and the conspicuousness of the clause. Simpson v. MSA of Myrtle Beach, Inc., 373 S.C. 14, 25, 644 S.E.2d 663, 669 (S.C. 2007). In the context of procedural arbitrability issues, the Fourth Circuit has described unconscionability as whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker. Id. (citing Hooters of Amer., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999)).

Plaintiffs essentially argue that the Real Estate Purchase Agreement, which contains the arbitration provision, is an adhesion contract. Adhesion contracts are standard form contracts offered on a take-it-or-leave-it basis with terms that are not negotiable. Simpson, 373 S.C. at 26-27, 644 S.E.2d at 669 (citing Munoz v. Green Tree Fin. Corp., 343 S.C. 531, 541, 542 S.E.2d 360, 365 (2001)). Adhesion contracts are not per se unconscionable. Lackey v. Green Tree Fin. Corp., 330 S.C. 388, 395, 498 S.E.2d 898, 902 (Ct.App.1998). As the South Carolina Supreme Court has noted, the standardization of contracts is "'a rational and economically efficient response to the rapidity of market transactions and the high costs of negotiations.'" Id. (quoting Goodwin v. Ford Motor Credit Co., 970 F.Supp. 1007, 1015 (M.D.Ala.1997)).

Plaintiffs assert that they were pushed into signing the Real Estate Purchase Agreement and that it is reasonable for Plaintiffs to fail to read the clause before signing and that they were more focused on the purchase price than on the meaning of the arbitration language. Plaintiffs also assert that they were made to believe they could not purchase this type of luxury property anywhere else on the Grand Strand.

The "mere fact that one party to the contract is larger than the other" cannot be the basis of a finding of unconscionability of an arbitration clause in a contract. Stedor Enters., Ltd. v. Armtex, Inc., 947 F.2d 727, 733 (4th Cir. 1991). Likewise, "[i]nequality of bargaining power alone will not invalidate an arbitration agreement." Munoz, 343 S.C. at 541 n.5, 542 S.E.2d at 365 n.5 (citing Gilmer, 500 U.S. at 20). Furthermore, a party to a contract has a duty to read the contract and learn its contents before signing it. Burwell v. South Carolina Nat. Bank, 288 S.C. 34, 39, 340 S.E.2d 786, 789 (1986) (citing J.B. Colt Co. v. Britt, 129 S.C. 226, 123 S.E. 845 (1924)). Plaintiff fails to present evidence of inequality in bargaining power or oppressive provisions in the agreement to arbitrate or other circumstances showing an absence of meaningful choice sufficient to defeat Defendants' Motion.

Plaintiffs also argue that the arbitration clause is one-sided in favor of Defendants because it provides, with regard to indispensable parties, that EITHER OR [sic] US SHALL BE FREE NOT TO SO PARTICIPATE IN THE BINDING ARBITRATION AND MAY PURSUE ALL REMEDIES AVAILABLE AT LAW OR IN EQUITY TO RESOLVE THE DISPUTE FOR WHICH SUCH NON-PARTICIPATING PARTY IS INDISPENSABLE, PROVIDED THAT SUCH DISPUTE TO BE RESOLVED IS TRIED NON-JURY." A plain reading of this provision reveals that the phrase "either of us" refers to both Plaintiffs and Defendants and permits both Plaintiffs and

Defendants to abandon arbitration and to proceed to a non-jury resolution of a dispute to which indispensable parties cannot be joined. Plaintiff has failed to show that the arbitration agreement is one-sided in favor of Defendants.

Finally, Plaintiffs argue that arbitration agreements should not apply to "outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings." Aiken v. World Fin. Corp. of S.C., 373 S.C. 144, 151, 644 S.E.2d 705, 709 (2007). Plaintiffs assert that they could not have foreseen the fraud, conspiracy, and violation of the SCUTPA at the time of the signing of the agreement and thus, the arbitration agreement is unenforceable.

The Aiken court, applying the well-established law that a party cannot be required to submit to arbitration any dispute which he has not agreed to submit, found that the theft of the plaintiff's personal information by the defendant's employees was so outrageous and unforeseeable that the plaintiff, by signing the arbitration agreement, could not possibly have been agreeing to arbitrate claims arising from such unanticipated conduct. Id. The court finds that the claims alleged by Plaintiffs in the present case do not rise to the level of outrageousness as those set forth in Aiken. See, e.g., Partain v. Upstate Automotive Group, 378 S.C. 152, 662 S.E.2d 426 (S.C. Ct. App. 2008) (finding claim under SCUTPA distinguishable from claims raised in Aiken); Timmons v. Starkey, 380 S.C. 590, 671 S.E.2d 101 (S.C. Ct. App. 2008)(declining to apply Aiken exception to claims, including breach of contract with fraudulent intent).

In sum, the undersigned finds that the arbitration agreement is not unconscionable.

### E. Applicability to Minor Plaintiff

Plaintiffs Thomas and Jean Marie Osborne bring this action individually and as Guardians ad Litem for their minor son, Thomas William Osborne. The minor son is not a party to the Real

Estate Purchase Agreement and, thus, Plaintiffs argue, he is not bound by the arbitration provision therein. Plaintiff cites to two federal cases outside of this Circuit as well as several state law cases outside of South Carolina where the courts have held that children cannot be bound by their parents' signatures when it comes to arbitration. See, e.g., Troshak v. Terminix Internat. Co., C/A No. 98-1727, 1998 WL 401693 (E.D.Pa. July 2, 1998), Fleetwood Enters. v. Gaskamp, 280 F.3d 1069, 1073-77 (5th Cir. 2002). It is not necessary to decide this issue. Assuming the child is not a party to the contract by virtue of his parents' signatures, a nonsignatory can be compelled to arbitrate if he seeks a direct benefit under the contract containing the arbitration agreement as discussed below. See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411 (4th Cir. 2000); R.J. Griffin & Co. v. Beach Club Homeowners Assoc., Inc., 384 F.3d 157, 161 (4th Cir. 2004).

Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir. 2000)(quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960)). However, it is clear that under some circumstances that "a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause." Id. Nonsignatories to a contract can be bound by an arbitration clause "when theories arising out of common law principles of contract and agency law are used to bind [them]." R.J. Griffin & Co. v. Beach Club II Homeowners Assoc., Inc. 384 F.3d 157, 160 (4th Cir. 2004)(internal quotations and citations omitted). A party may be equitably estopped from avoiding an arbitration provision in a contract. Id.[3] Equitable estoppel "precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." Id. "In the

---

[3] Because this presents no state law question of contract formation or validity, federal substantive law governs the analysis. R.J. Griffin, 384 F.3d at 160, note 1.

context of arbitration, the doctrine applies when one party attempts to hold another party to the terms of an agreement while simultaneously trying to avoid the agreement's arbitration clause." Id. at 161 (internal quotations and citations omitted). The doctrine applies when the nonsignatory seeks a "direct benefit" under the contract. The benefit must flow from the contract itself and not from the contractual relation of the parties to the agreement. Id. at 162 (citing MAG Portfolio Consult v. Merlin Biomed Group, 268 F.3d 58,61 (2d Cir.2001): Coots v. Wachovia Sec., Inc., 304 F.Supp.2d 694, 699 (D.Md. 2003)).

As represented at the hearing held August 27, 2009, the minor child's personal injury claims are asserted in the thirteenth cause of action of Plaintiff's Amended Complaint. Defendants assert that the minor child clearly seeks a benefit from the Real Estate Purchase Agreement and, thus, the minor child is bound by the arbitration provision in that Agreement. To determine whether the minor child is seeking a benefit under the Agreement, this Court must decide whether the duties Plaintiffs allege that Defendants owed to the minor child arise from common law or the Real Estate Purchase Agreement

Plaintiffs assert in their Amended Complaint that "Defendants owed Plaintiffs the duty to provide Plaintiffs with a reasonably safe, structurally sound, fit and habitable Unit with a safe and properly functioning HVAC system as bargained for and paid for under the sales agreement between the parties." Amended Complaint at ¶ 139. At the August 27, 2009, hearing, Plaintiff's counsel agreed that although the minor child does not assert a breach of contract claim, the minor child's claim as alleged in the Complaint does assert duties of Defendants that arise both from the obligations under the contract and obligations under common law. Accordingly, the court finds that the minor child's claims are subject to the arbitration agreement.

### F. Indispensable Parties

Finally, Plaintiffs argue that it would not be proper to subject their claims to arbitration before they are allowed to add indispensible parties to the case and those parties have had an opportunity to address the arbitration issue. Plaintiffs assert that they have not had the opportunity to add these parties or to discover additional potential parties because Defendants will not consent to allow them to amend the Complaint. Rule 15, Fed.R.Civ.P., allows for the amendment of pleadings upon consent of all parties or with leave of the Court. A review of the docket reveals that Plaintiffs have not sought leave from this Court to amend their Complaint because they have not filed a Motion to Amend. Nevertheless, Plaintiffs argument is irrelevant with respect to the Grand Dunes Defendants and R.J. Griffin because they seek only to compel arbitration of the claims asserted against them, not of any claims Plaintiff may have against other, potential defendants. Accordingly, Plaintiffs attempt to avoid arbitration by arguing that there may be other parties who are not subject to arbitration that they may want to add as Defendants is speculative and without merit.

### V. CONCLUSION

For the reasons set forth above, it is recommended that Defendants Marina Inn @ Grande Dunes, LLC, The Marina Inn Villas and Condominium Association, Inc., Grande Dunes Development Company, LLC, Grande Dunes Properties, LLC, Burroughs & Chapin Company, Inc., Burroughs & Chapin Realty, Inc. d/b/a Prudential Burroughs & Chapin Realty, Inc. and Grand Dunes Rental Management Company, LLC's (Grand Dunes Defendants) Motion to Compel Arbitration (Document # 12) be granted and Defendant Dunn Southeast Inc., d/b/a R.J. Griffin and Company's Motion to Stay and Compel Arbitration (Document # 18) be granted. Because all of

Plaintiffs' claims are covered by the arbitration agreement, dismissal of this action to pursue arbitration is appropriate. <u>Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.</u>, 252 F. 3d 707, 709-10 (4th Cir. 2001). Thus, it is further recommended that this case be dismissed.

                                        <u>s/Thomas E. Rogers, III</u>
                                        Thomas E. Rogers, III
                                        United States Magistrate Judge

August 31, 2009
Florence, South Carolina